## QUINN vs. QUINN.

ADVERSE POSSESSION :    (1, 2.) *When one person's possession held subordinate to another's title.*    (3.) *Waiver of right to assert adverse possession.*

EJECTMENT :    (4.) *Whether pending suit in equity by defendant can be pleaded in bar.*

1. The character of one's possession of land is determined by that of his entry, unless he has given the party holding the title under which he entered, notice of his intention not to hold under that title, or unless there has been a legal eviction, and possession taken or continued under a paramount title.

Quinn vs. Quinn.

2. A. entered on land under a bond from S. to sell and convey to him and M. Afterwards he and M. released S. from the covenants of the bond, and quit-claimed to him all their interest, and S. thereupon conveyed to Y., who conveyed to the plaintiff. A. continued in possession until his death, but just prior thereto quit-claimed to the defendant, who took possession upon A.'s death. *Held,* that defendant's possession was subordinate to the title of S., and she could not acquire against S., or one claiming under him, an outstanding title (in this case a tax title) unless the provisions of sec. 11, ch. 138, R. S. (which permit one who has been in possession as tenant, on the expiration of ten years from the termination of his tenancy, or, where there has been no written lease, on the expiration of ten years from the last payment of rent, to set up a title adverse to his former landlord), are applicable in her favor.

3. Whether defendant would not be held to have waived her right, under said section 11, to set up a title adverse to that derived from S., where she had brought suit to enforce a specific performance of the bond of S. to sell and convey, is not here decided.

4. Defendant in ejectment cannot plead in bar the pendency of a suit in equity previously brought by him to assert his equitable title to the premises, against the plaintiff in ejectment; but should answer, setting up his equitable defense (with any other that he may have), and either proceed with his defense in the action at law, discontinuing his suit in equity, or, upon an allegation of the pendency of the latter, ask for a stay of proceedings in the former.

APPEAL from the Circuit Court for *Milwaukee* County.

Ejectment, commenced in December, 1867. The opinion will show clearly the grounds upon which the respective parties rested their claims of title. The defendant appealed from a judgment in favor of the plaintiff.

*Palmer, Hooker & Pitkin,* for appellant. [No brief on file.]

*Jenkins & Elliott,* for respondent.

DIXON, C. J. Aside from the tax deeds to Pixley and McCarthy, under which the defendant attempted to show title in herself, the source of the title and the claim of both parties is the same. Hatheway, or Swain, who held under him, was the common source. Hatheway's title was founded on the sheriff's deed and the two tax deeds of 1847 and 1848. Swain's title was the same. Swain executed the bond to sell and

Wis. xxvii—22

convey the premises to James Quinn and Timothy McGrath, under which James Quinn, who was the father of the defendant, entered and continued in possession until his death. Just prior to his death (in 1864), James Quinn quit-claimed the premises to the defendant, who upon his death entered and still retains the possession. Such is the claim of title and right of possession shown by the defendant, without the title offered to be proved by her under the tax deeds issued to Pixley and McCarthy, the evidence of which was rejected. But many years before his death, and before his quit-claim to the defendant, James Quinn and Timothy McGrath had released Swain from all the covenants of the bond, and quit-claimed to him all their interest in the premises; and Swain had thereupon (in 1851) conveyed to one Maurice Quinn, who conveyed to the plaintiff. Such is the title shown by the plaintiff, who has succeeded to all the rights of Swain, under whose bond, subsequently released by James Quinn, the latter entered and continued in possession until his death, and whose possession was thence transferred to the plaintiff by virtue of his quit-claim deed to her.

The first question is upon the rejection of the evidence of title offered by the defendant under the tax deeds to Pixley and McCarthy,[*] and by them conveyed to herself. The possession of the defendant is the same as that which the father had. His possession was that of a vendee under an executory contract for the purchase of the premises. It is the entry which decides the character and quality of the possession, and these remain unchanged until the possession has been actually surrendered, or until the tenant has avowed his intention not to hold in subordination to the title under which he entered, and given notice thereof to the party holding such title, or until an

---

[*] These deeds were made in 1858, 1859 and 1864.—REP.

eviction in due form of law and possession taken or continued under a paramount title. James Quinn having entered in pursuance of the bond for a conveyance, the relation in the nature of tenancy existing between him and Swain continued notwithstanding the release of the bond and surrender of his interest under it, because his possession remained the same. His possession was continuous and unchanged from the time of entry until his death, when he was succeeded by the defendant, whose right and claim of title was the same by virtue of his quit-claim deed to her. Her possession, therefore, does not differ from his, and she is estopped from setting up an outstanding title acquired during its continuance, unless the provisions of sec. 11, chap. 138, R. S. are applicable to the case. This is a question not raised, and one which we do not decide. If the provisions of that statute were applicable, then the relation of tenancy might be said to have ceased at the expiration of ten years from the time the bond was released, and no ground of estoppel to have existed after that period, except it were that the plaintiff had waived her rights under the statute by her submission to the title of the plaintiff and claim for specific performance of the bond for a conveyance in the two suits instituted by her for that purpose, which would also be another question. We decide neither of these questions; but, resting the decision upon the points presented by counsel, we hold that the defendant was estopped from setting up the adverse title claimed to have been acquired by her, and that her proofs in support of it were properly rejected.

The other question is as to the effect of the pendency of the suit in equity by the present defendant against the present plaintiff and Maurice Quinn. Such pendency is obviously no bar to this action. The remedy of the defendant, as decided by this court in *Wilson v. Jarvis*, 19 Wis. 601, was to have answered

setting up the pendency of that suit at the time this action was commenced, and any other defense she had or might plead hereto, and then to have applied to the court herein for a stay of proceedings until that suit was heard or tried; or, not choosing to apply for such stay, she might have proceeded in this action with her equitable defense, leaving the former suit to be discontinued. But the defendant has made no such answer. She has neither alleged the pendency of the former suit nor her equitable defense, if she has any, and so no question of the kind supposed, or of her equitable rights, is before us for consideration. Her answer was a mere denial of the plaintiff's legal title and right of possession, and upon that issue we think the plaintiff properly prevailed, and the judgment should be affirmed.

*By the Court.*—Judgment affirmed.