ALLEN VS. ALLEN, imp.

*September 4 — September 25, 1883.*

ADVERSE POSSESSION: EVIDENCE: COURT AND JURY. *(1) Presumption of adverse entry from continuous possession: (2) as between parent and child. (3) Case stated. (4) Devise by person in possession: Estoppel.*

1. Where adverse possession is alleged as a defense in ejectment, and there is no evidence bearing on the subject except the fact that the defendant and those under whom he claims had been in actual

possession and use of the land, cultivating and improving the same, having it assessed as their land and paying the taxes thereon, and in other respects using it as owners do, for more than twenty years before the commencement of the action, the defendant is entitled, at least, to have the question of adverse possession submitted to the jury.

2. But as between father and son the circumstances above mentioned would not have the same force in proving an adverse entry and possession as in the case of strangers.

3. Lands of the United States were entered by a father in the name of his son, and in 1849 the patent thereof was issued to the son, who was then five years of age. Before the issuance of the patent the father took possession of the land, and occupied it continuously, improving it and paying the taxes, until his death in 1878. The son lived with his father until some years after he became of age. The father recognized his son's title for years after he took possession of the land, and never asserted a hostile title in himself until a few months before his death. These facts being conclusively shown in an action of ejectment brought by the son against one to whom the father, by will dated in 1877, had devised the land, it is *held* that the court properly directed a verdict for the plaintiff without submitting the question of adverse possession to the jury.

4. The fact that by his will the father had devised other lands to the plaintiff, and that the order of the county court distributing the father's estate had assigned such other lands to the plaintiff and had assigned the land in controversy to the defendant in accordance with the will, could not prevent the plaintiff from asserting his title to the land in controversy.

APPEAL from the Circuit Court for *Sauk* County.

The case is stated in the opinion. The final order of the county court distributing and assigning the estate of Abram Allen, deceased, in accordance with his last will and testament, was made before the commencement of the action.

For the appellant there was a brief signed by *Barker & Barlow*, as attorneys, and *Lusk & Perry*, of counsel, and oral argument by *Mr. Lusk.* They contended, *inter alia*, that the question of adverse possession in this case was one of intention, and should have been submitted to the jury. *McPherson v. Featherstone,* 37 Wis., 632; *Taylor v. Horde*,

1 Burr., 60; *Hall v. Dewey*, 10 Vt., 593; *Runcorn v. Doe dem. Cooper*, 5 Barn. & C., 696; *Bradstreet v. Huntington*, 5 Pet., 402; *Poignard v. Smith*, 6 Pick., 172; *Jackson v. Joy*, 9 Johns., 102; *Jackson v. Stephens*, 13 id., 496; Angell on Lim., 399, 400.

For the respondent there was a brief by *M. Bently*, as attorney, and *Tenney & Bashford*, of counsel, and oral argument by *Mr. Bashford*.

TAYLOR, J. This is an action of ejectment. The appellant sets up adverse possession for more than twenty years previous to the commencement of the action as a defense. Upon the trial in the circuit court the judge instructed the jury to render a verdict for the plaintiff. To this instruction the appellant excepted. The only material question raised upon this appeal is, Was there any evidence given on the trial which tended to prove the defense of adverse possession set up by the appellant? If there was, then it was error to direct a verdict for the plaintiff.

The evidence upon the trial showed that the respondent, *Isaac B. Allen*, was the patentee of the United States, and that he had made no conveyance thereof. *Lydia C. Allen* was the widow of Abram Allen, deceased, the father of the respondent, and claimed title to the land as devisee under the will of said Abram Allen. The will of Abram Allen was dated December, 1877, and was probated in 1878. The land was patented to the respondent by the United States in 1849. It was probably entered by the father a year or two before the patent was issued. In 1849, when the patent was issued, the respondent was a child about five years old, and lived with Abram Allen, his father, and continued to live with him from that time until he became of age, and for some years after. Shortly after the land was entered, and before the patent was issued to the son, the father, Abram Allen, took possession of the land, and occupied it contin-

uously from that time until his death, in 1878, improved the same, built a barn and a small house on it, and paid the taxes thereon. There is no evidence in the case showing that the father asserted any title to the land hostile to the title of his son, unless his possession, use of, and improvement of the same for over thirty years is evidence of such assertion of title, until a few months before his death, and about the time he made his will devising the lands to his wife, the present appellant. He then said to the witnesses Van Ingen, upon being spoken to about this land belonging to his son: "I will tell you how it is. I pre-empted that land myself in *Isaac's* name. I done it to get out to the road. I was cut off from the road. I had pre-empted all the land I could before this, and could not get it in any other way, only pre-empting it in his name (*Isaac Allen's*). I ran the river to earn the money to pay for it, and I have a duplicate for the deed. Now, what do you think about it? It is no more *Isaac Allen's* than it is yours."

The Revised Statutes of 1878, sec. 4210, provide that "in every action to recover real property or the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law, and the occupation of such premises by another person shall be deemed to have been under and in subordination to the legal title, unless it appear that such premises have been held and possessed adversely to such legal title for ten years, under the provisions of the next section, or twenty years under the provisions of section 4213, before the commencement of such action." Sec. 4213 reads as follows: "When there has been an actual continued occupation of any premises under a claim of title exclusive of any other right, but not founded upon any written instrument, or any judgment or decree, the premises so actually occupied, and no other, shall be deemed to be held adversely." Sec. 4207, R. S., is as follows: "No action for the

recovery of real property, or the possession thereof, shall be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the premises within twenty years before the commencement of such action." Under these provisions of the statute it appears to us very clear that the plaintiff was entitled to judgment upon the evidence in the case. He proved his legal title to the premises beyond question by the production of the patent from the United States. Having shown himself possessed of the legal title under the provisions of sec. 4210, above quoted, he is presumed to have been possessed thereof within the time required by law,— that is, within twenty years, as prescribed in sec. 4207,— and the occupancy of the premises by any other person " is deemed to be in subordination to the legal title, unless," etc. This legal presumption may, however, be overcome by proof of an adverse possession of twenty years under sec. 4213, and when such legal presumption is overcome by proof of such adverse possession, the plaintiff cannot recover, because he fails to show a possession or seizure of the premises in question within twenty years before the commencement of the action, as prescribed in sec. 4207. The plaintiff's proofs having established his legal title, the burden of proof is on the defendant to show an adverse possession in this case under sec. 4213, above quoted.

On the part of the learned counsel for the appellant it is insisted that the mere proof of occupation or possession of the premises by the defendant, or of those under whom she claims, for more than twenty years, is of itself evidence that such occupation is " under a claim of title exclusive of any other right," within the meaning of said sec. 4213, without any further proof. For the purposes of this case, it may be admitted that from proof of occupation and use by the defendant, or those under whom she claims, for more than twenty years, where such occupation and use are consistent with the

claim of ownership, such claim may be presumed; and when nothing else appears in the case; it would be a question for the jury to determine whether the entry was under a claim of title exclusive of any other right, and the possession adverse under said sec. 4213. In *McPherson v. Featherstone*, 37 Wis., 632, this view, as to the effect of a continued possession for more than twenty years, seems to have had some sanction. In *Link v. Doerfer*, 42 Wis., 391–394, the late learned Chief Justice RYAN seemed to take a different view of the effect to be given to mere proof of possession and use, as constituting the defense of adverse possession. He holds that under sec. 8, ch. 138, R. S. 1858, now sec. 4213, R. S. 1878, it is necessary to prove an entry under claim of title in order to set the statute running, and that proof of possession under claim of title for twenty years, would be presumptive evidence that the entry was made with such claim of title; but that proof of possession merely, for twenty years or more, would not raise a presumption that the entry was adverse and so bar the legal title.

In the case of *Link v. Doerfer* the proof showed that Doerfer had been in possession of the land for sixteen years, working and improving the same, but there was no proof that he made any claim of ownership except what might be inferred from the fact that he worked and improved the same, rendering no account to the real owner. The learned chief justice says " that after continuous occupation under claim of title for twenty years, the entry shall be deemed to have been adverse. But such presumption would only shift the *onus probandi*, and does not disturb the rule that the entry controls the claim of title under it. *Pepper v. O'Dowd*, 39 Wis., 538. But the presumption is founded on continued possession under claim of title for twenty years, and does not arise until the statute has run upon it. It does not sooner arise upon claim of title, and does not arise at all without claim of title. Upon the possession of Hilbert, as

far as disclosed in this case, the statute would not run. It could not operate by any lapse of time to toll an entry." If the learned chief justice intended to lay it down as a rule of evidence that proof of possession, occupancy, and use of real estate, continued for more than twenty years, would not tend to prove that such occupancy and use was under claim of title, and so be adverse under the provisions of sec. 4213, above quoted, I should hesitate to give my assent to such rule. The question of adverse possession under the statute was not in question in that case, and what was said by the learned chief justice was merely by way of argument to sustain the point that Doerfer was not in such position by reason of his possession of the premises in question; that he could not lawfully acquire title to the same by tax deed. I am of the opinion that the acts of the party in the possession of real estate may be evidence of a claim of title to the same, as well as his declarations to that effect, and that seems to have been the opinion of the court in the case of *McPherson v. Featherstone.*

The learned judge who delivered the opinion in the case of *Davis v. Bowmar*, 55 Miss., 742–766, says: "It is certain that appellant took possession, under some sort of right in himself, of a wilderness, felled the forest, cleared the jungle, erected fences and buildings, made the place his home, cultivated it, protected it by levees, had it assessed as his own, paid taxes on it, and enjoyed exclusive possession and control of it as his own from 1836 to 1863; and in the uncertainty, if any, from the imperfect knowledge we have, as to how the possession began, appellant is entitled to the benefit of the just presumption that he was holding as owner from having acted so long and from the beginning as owners do, and so inconsistently with the idea of title in any other than himself." This view of the effect to be given to evidence of long-continued occupation and use of real estate by a person in the actual possession thereof, and

using the same as an owner would ordinarily use the same, as proof of adverse possession under the statute, is, we think, the proper view, and is supported by the authorities. *Hollister v. Young*, 42 Vt., 407; *Johnson v. Gorham*, 38 Conn., 522; *French v. Pearce*, 8 Conn., 443; *Smith v. Roberts*, 62 Ala., 83; *Overfield v. Christie*, 7 Serg. & R., 177; *Lessee of Paine v. Skinner*, 8 Ohio, 159; Sedg. & W., Trial of Title to Land, § 758; Angell on Lim., §§ 390, 391, 392, and cases cited in the notes; *Alexander v. Polk*, 39 Miss., 736. Had there been no evidence in this case bearing upon the question of adverse possession except the fact that the defendant and those under whom she claims had been in the actual possession and use of the land, cultivating and improving the same, having the same assessed as their lands, and paying the taxes thereon, and in other respects using said land as the owners usually do, for more than twenty years before the commencement of the plaintiff's action, we are of the opinion that the defendant would have been entitled, at least, to have had the question of their holding adversely to the plaintiff submitted to the jury, and, perhaps, to have a verdict directed in her favor.

But the difficulty with the defense of adverse possession under the statute in this case is that the undisputed evidence shows that Abram Allen, under whom the defendant claims, did not enter into the possession of the premises under any claim of title hostile to the plaintiff's title. On the contrary, it shows beyond dispute that he entered, claiming the right to enter, under the title of his son, the plaintiff. He admits that he purposely entered the land in the name of his son, and it must be presumed that the patent was also issued to the son under his direction and with his assent. The evidence, also, shows conclusively that he recognized the son's title for many years after he took actual possession thereof. This evidence completely destroys the presumption that his entry into the possession was hostile to the plaintiff's title.

Having himself placed the title in the son, and then taking possession by virtue of such title, his original entry must be held to be in subordination to such title. Again, the undisputed evidence shows that he recognized the son's title for years after he took possession of the lands. After such entry and recognition of the son's title, the possession of the father would not become adverse until he did some act disavowing the right of the son; and asserting title in himself in hostility to the son's title, and such disavowal of the son's title, and his claim to hold in hostility to the title under which he took possession, must be brought to the knowledge of the son before the statute could be set to running under such subsequent possession. See *Sydnor v. Palmer*, 29 Wis., 226–249; *Pepper v. O'Dowd*, 39 Wis., 548. In this case the father of the plaintiff, having caused the title to be placed in his son, is in no better position than he would have been had he been theretofore the owner of the land, and had conveyed it by a valid deed to his son. In such case the rule of law is that the possession of the grantor is presumed to be permissive and not adverse, and in order to change the possession to an adverse one notice of such claim and change must be brought to the knowledge of the grantee before it can be effective to set the statute running. See *Roebke v. Andrews*, 26 Wis., 344; *Morrill v. Titcomb*, 8 Allen, 100; *McPherson v. Featherstone, supra; Sherman v. Kane*, 86 N. Y., 57; *Davis v. Bowmar*, 55 Miss., 742–766.

There is another fact in this case which makes strongly against the claim of the defendant that Abram Allen's possession and occupancy of the land were adverse and hostile to the title of the plaintiff. It is the fact that Abram Allen was the father of the plaintiff, who was at the time a mere child living with his father, and so doing until long after he came of age. In such case mere possession and use of the premises by the father, and the payment of taxes thereon, would not have the same force in proving an adverse entry

Allen vs. Allen, imp.

and holding as it would in the case of mere strangers. It is well said by the learned judge who delivered the opinion of the court in the case of *Davis v. Bowmar, supra*, p. 766: "Among relatives, and especially between those occupying parental and filial, or *quasi*-parental and filial, relations, these circumstances would not be deemed so convincing because they may be consistent with a mere permissive enjoyment of a usufructuary possession." The evidence in the case having clearly shown affirmatively that the entry and possession of the father, Abram Allen, was not hostile to the title of the plaintiff in its inception, and that if it ever became so it was not until shortly before the death of the father, and but a few years before the commencement of this action, it was the duty of the circuit judge to direct a verdict in favor of the plaintiff.

We are unable to see how the plaintiff is prejudiced by the order of the county court distributing the estate of the deceased. His right to the land in question is in no way dependent upon the will of his father. He neither claims it as heir or devisee of his father, but by grant from the United States. The fact that his father undertook by his will to devise this land of the son to the wife of the deceased, and in the same will devised to the son other real estate to which the father held the title, does not prevent the son from claiming such last-named real estate under the will, without abandoning his claim to the lands described in such will, and which are owned by him by a title paramount to that of the testator.

*By the Court.*— The judgment of the circuit court is affirmed.